IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LPP MORTGAGE LTD.,

    Plaintiff,

v.                                        No. CIV 14-0367 RB/CG

WORLDWIDE CHRISTIAN AID, INC.,
a New Mexico Nonprofit Corporation;
BAPTIST CHURCH PENSION AND
RETIREMENT FUND, INC., a New Mexico
Nonprofit Corporation; FIRST FINANCIAL
BANK, N.A., a National Banking Association;
ALMA A. SAUL; CONCEPTION S. ALIVIADO;
THE ESTATE OF RAYMUNDO E. ALIVIADO;
ALICE M. BENSON; and any UNKNOWN
CLAIMANTS OF INTEREST IN THE PROPERTY,
and UNKNOWN HEIRS,

    Defendants.

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER STRIKING DOCUMENTS AND IMPOSING SANCTIONS

This matter is before the Court on Plaintiff's Request for Evidentiary Hearing Due to Fraud on the Court. (Doc. 92.) Plaintiff asserts that Non-Party Roger Saul filed pleadings and sent correspondence to the Court with the signatures of pro se Defendants/Counterclaimants Alice M. Benson, Conception S. Aliviado and Defendant Alma A. Saul, without their knowledge or approval. (*Id.*) Plaintiff requests that the Court dismiss the counterclaims filed by Ms. Benson and Ms. Aliviado and sanction Roger Saul. (*Id.*) On May 6, 2015, the Court held an evidentiary hearing and received the testimony of Ms. Benson, Ms. Aliviado, Ms. Saul, and Mr. Saul. Having carefully considered the submissions and arguments of counsel and the evidence adduced at the hearing, and being otherwise fully advised, the Court **GRANTS** Plaintiff's requests.

## BACKGROUND

On April 23, 2004, Defendant\Counterclaimant Worldwide Christian Aid, Inc. executed a Business Loan Agreement and a Promissory Note for the purpose of borrowing $315,000.00 from Charter Bank of Santa Fe, Plaintiff's predecessor in interest. (Docs. 1-1 and 1-2.) The loan was secured by a Mortgage and an Assignment of Rents on real property and improvements thereon consisting of Ortega Park, an eighteen-unit mobile home park in Albuquerque, New Mexico (Property). (Docs. 1-3 and 1-6.) Alma A. Saul, Conception S. Aliviado, and Raymundo E. Aliviado executed Commercial Guaranty Agreements guaranteeing payment of the Note by Worldwide Christian Aid, Inc. (Docs. 1-4 and 1-5.) The Note, Mortgage, Assignment of Rents, and Guaranty Agreements were assigned to Plaintiff on October 15, 2011. (Doc. 1-9.)

On November 7, 2012, Plaintiff brought suit in New Mexico state district court to collect the debt and foreclose on the Property. *See LLP Mortgage v. Worldwide Christian Aid, Inc., et al.*, No. D-202-CV-2012-10366. The parties negotiated a Settlement Agreement and Release and entered into a Modification Agreement. (Docs. 1-10 and 1-11.) In addition to Plaintiff, the parties to the Settlement Agreement are Worldwide Christian Aid Inc., Baptist Church Pension and Retirement Fund, Inc., Roger S. Saul, Alma A. Saul, Conception S. Aliviado, the Estate of Raymundo E. Aliviado (deceased), and Alice M. Benson, as Vice-President of the Baptist Church Pension and Retirement Fund, Inc. (Doc. 1-11). The Modification Agreement required Worldwide Christian Aid Inc. to pay Plaintiff monthly payments of $1,761.23 beginning on June 1, 2013. (*Id*.)

The Modification Agreement stated that the unpaid principal balance as of January 23, 2013, was $242,993.54, with interest paid to October 12, 2012. (Doc. 1-11.) The correct date of the interest calculation was allegedly October 12, 2011, not October 12, 2012. (*Id*.) However, the

sum stated in the Modification Agreement allegedly reflected the amount that the parties agreed was owed at the mediation. (*Id.*)

Worldwide Christian Aid, Inc. failed to pay the loan as agreed under the new terms. (Doc. 1-11.) Plaintiff declared the note to be in default and accelerated the balance due. (*Id.*) Worldwide Christian Aid, Inc. stopped making regular payments in June 2013. (Doc. 81.) On November 14, 2013, Plaintiff notified Defendants of the default and demanded payment. (Doc. 1-13.)

On April 18, 2014, Plaintiff filed suit in this Court for payment of money owed and to foreclose on the Property. (Doc. 1-11.) Plaintiff alleges that Plaintiff is entitled to judgment against Defendants in the principal sum of $241,377.75, plus interest, late fees, attorney fees, tax, costs and expenses. (Doc. 1.)

On November 25, 2014, Ms. Aliviado and Ms. Benson purportedly filed counterclaims for breach of contract, breach of the covenant of good faith and fair dealing, and "attorney deceit" with respect to the Modification Agreement. (Docs. 30 and 33.) Ms. Aliviado and Ms. Benson included documents to the FBI claiming that Plaintiff's attorneys, as well as Andrew Beal, the purported owner of Plaintiff, engaged in perjury and interstate extortion. (*Id.*)

On April 14, 2015, Plaintiff filed a Request for Evidentiary Hearing Due to Fraud on the Court. (Doc. 92.) Plaintiff requests an award of attorney fees and costs incurred relating to the impersonation. On April 29, 2015, Roger Saul responded with an Offer of Judgment. (Doc. 103.) Therein, Roger Saul apologized for any improprieties and offered to perform community service. (*Id.*) Roger Saul averred that Defendants/Counterclaimants Conception S. Aliviado and Alice M. Benson want to withdraw their pleadings. (*Id.*)

## FINDINGS OF FACT

The Court makes the following factual findings based on the evidence adduced at the evidentiary hearing, including the testimony of Ms. Benson, Ms. Aliviado, Ms. Saul, and Roger Saul.

1. Ms. Benson did not recall being served with a copy of the Complaint.[1] (Tr. at 11-12.) Ms. Benson did not hear anything about this case until a few weeks before the evidentiary hearing. (Tr. at 16.) Ms. Benson did not file the answer and counterclaim that was filed with her name. (Tr. at 13.) Ms. Benson did not ask anyone to file the answer and counterclaim on her behalf. (*Id*.) Ms. Benson did not sign any of documents filed with her signature in this case. (Tr. 21.)

2. Ms. Benson did not authorize Roger Saul to file any documents on her behalf or forge her signature in this matter. (Tr. 23-24.) Ms. Benson's signature on the answer and counterclaim was forged. (Tr. 14-15.) Ms. Benson never wrote a letter to United States Magistrate Judge Carmen E. Garza. (Tr. 19-20.) Ms. Benson never propounded discovery requests on LPP. (*Id*.) Ms. Benson never sent an e-mail from Mr. Saul's e-mail address. (Tr. 22.) Ms. Benson did not sign the affidavit attached to the offer of judgment filed by Mr. Saul. (Tr. 26.) Mr. Saul signed Ms. Benson's name on the documents. (Tr. 34.)

3. Conception S. Aliviado is Alma Saul's mother and she had resided with Roger and Alma Saul for over twenty years. (Tr. 42.) Ms. Aliviado's primary language is Filipino, but she is able to understand, speak, read, and write English. (Tr. 39-42.) Ms. Saul did not need an interpreter at the hearing. (Doc. 58.)

4. Ms. Aliviado gave permission to Roger Saul to draft, sign, and file documents for her. (Tr. 42.) However, Mr. Saul neither showed her the documents nor informed Ms. Aliviado

---

[1] The record indicates that Ms. Benson was personally served with the Summons on May 12, 2014. (Doc. 10).

4

of their contents before signing Ms. Aliviado's name. (*Id.*) Ms. Aliviado did not know that a document with her signature accused Plaintiff's representatives of false statements. (Tr. 43-44.) Ms. Aliviado did not know who Andrew Beal is and she did not know she signed a letter that accused him of perjury. (Tr. 45-47.) Ms. Aliviado signed documents that Mr. Saul drafted but she did not read the documents before she signed them. (Tr. 48.)

5. Alma A. Saul asked Mr. Saul to sign her name to documents that he filed in this matter, including affidavits. (Tr. 55-56.) Ms. Saul did not draft any documents that have been filed in her name in this case. (Tr. 57-58.) Ms. Saul did not sign Ms. Benson's signature or Ms. Aliviado's signature on any documents. (Tr. 60.)

6. Roger Saul acknowledged he had engaged in improprieties including forging Ms. Benson's signature on pleadings in this matter. (Tr. 62.) Roger Saul did not show Ms. Benson, Ms. Aliviado, or Ms. Saul the documents. (*Id.*) Roger Saul did not inform the Court or counsel that he signed the documents for Mr. Benson. (Tr. 62-63.) Roger Saul admitted that he forged Ms. Aliviado's signature and Ms. Saul's signature on pleadings. (Doc. 63.) Roger Saul sent e-mails to opposing counsel pretending to be Ms. Benson or Ms. Aliviado. (Doc. 64.) Roger Saul admitted that he forged Ms. Benson's signature on an affidavit and falsely claimed to have notarized it. (Doc. 71.) Roger Saul is not an attorney. (*Id.*) Ms. Saul, Ms. Benson, and Ms. Aliviado requested to withdraw the pleadings filed with their names. (Doc. 73.) Roger Saul apologized and offered to perform community service. (*Id.*)

## CONCLUSIONS OF LAW

1. Jurisdiction arises under 28 U.S.C. § 1332.

2. This Court has inherent authority to manage the proceedings before it and to impose sanctions when appropriate. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-45 (1991).

This power extends to non-parties who engage in vexatious conduct. *See id.*, 501 U.S. at 40, 55 (upholding sanctions of almost $1 million in attorneys' fees and costs against sole shareholder and director of company) *Amerisource Corp. v. RX USA Int'l, Inc.*, No. 02–CV–2514 (JMA), 2010 WL 2730748, at *8 (E.D.N.Y. July 6, 2010) (imposing sanctions of $100,000 against defendant and its non-party majority shareholder and chief executive); *In re Bridgestone/Firestone, Inc. Tire Prods. Liab. Litig.*, No. 1:00–ml–09374–SEB–JMS, 2010 WL 2484250, at *2, *8 (S.D. Ind. June 11, 2010) (imposing sanctions of $50,000 each against two lawyers and sanctions of $100,000 against expert witness and consultant).

3. Roger Saul forged the signature of Alice M. Benson on documents filed with the Court. (Docs. 33, 35, 46, 56, 71, 74, 78, 79, 82, 84, and 96.)

4. Alice M. Benson did not intend to file any documents with the Court.

5. The Court will strike the documents purportedly filed by Alice M. Benson.

6. Roger Saul forged the signature of Conception S. Aliviado on documents filed with the Court. (Docs. 30, 36, 39, 48, 57, 72, 83, and 106.)

7. Conception S. Aliviado did not intend to file any documents with the Court.

8. The Court will strike the documents purportedly filed by Conception S. Aliviado.

9. Roger Saul forged the signature of Alma A. Saul on documents filed with the Court. (Docs. 73, 93, and 105.)

10. Alma A. Saul did not intend to file any documents with the Court.

11. The Court will strike the documents purportedly filed by Alma A. Saul.

12. Roger Saul engaged in vexatious conduct by forging the signatures of Ms. Benson, Ms. Aliviado, and Ms. Saul on pleadings filed with the Court.

13. The Court is outraged by the conduct of Roger Saul. Given the pleadings and testimony of Mr. Saul, it is quite clear that Mr. Saul recognized that his conduct was improper.

14. The Court will impose sanctions on Roger Saul by awarding reasonable attorneys' fees and costs to Plaintiff in an amount to be determined.

**IT IS SO ORDERED.**

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**