IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**LPP MORTGAGE LTD.,**

      **Plaintiff,**

v.                                                                                                    No. 14-cv-0367 RB/CG

**WORLDWIDE CHRISTIAN AID, INC.,**
a New Mexico Nonprofit Corporation;
**BAPTIST CHURCH PENSION AND
RETIREMENT FUND, INC.,** a New Mexico
Nonprofit Corporation; **FIRST FINANCIAL
BANK, N.A.,** a National Banking Association;
**ALMA A. SAUL; CONCEPTION S. ALIVIADO;
THE ESTATE OF RAYMUNDO E. ALIVIADO;
ALICE M. BENSON;** and any **UNKNOWN
CLAIMANTS OF INTEREST IN THE PROPERTY,**
and **UNKNOWN HEIRS,**

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's Motion for Summary Judgment, filed on August 21, 2015 (Doc. 138). The Court's jurisdiction arises under 28 U.S.C. § 1332. Having considered the submissions of counsel and relevant law, the Court will **GRANT** this motion.

**I.  Background**

On April 23, 2004, Defendant Worldwide Christian Aid, Inc. ("Defendant Worldwide") executed a Business Loan Agreement and a Promissory Note for the purpose of borrowing $315,000.00 from Charter Bank of Santa Fe, Plaintiff's predecessor-in-interest. (Docs. 1-1 and 1-2.) The Loan was secured by a Mortgage and an Assignment of Rents on real property and

improvements thereon consisting of Ortega Park, an eighteen-unit mobile home park in Albuquerque, New Mexico (Property). (Docs. 1-3 and 1-6.) The Business Loan Agreement, Promissory Note, and Mortgage were signed by Roger S. Saul, as Treasurer of Defendant Worldwide, and Alma A. Saul, as President of Defendant Worldwide. (Docs. 1-1, 1-2, 1-3.) Roger S. Saul, Alma A. Saul, Conception S. Aliviado, and Raymundo E. Aliviado executed Commercial Guaranty Agreements guaranteeing payment of the Promissory Note by Defendant Worldwide.[1] (Docs. 1-4 and 1-5.) The Business Loan Agreement, the Promissory Note, the Mortgage, the Assignment of Rents, and the Commercial Guaranty Agreements (collectively "Loan Documents") were assigned to Plaintiff on October 15, 2011. (Doc. 1-9.)

Defendant Worldwide failed to pay the Loan as agreed. (Doc. 138-1.) On April 18, 2014, Plaintiff filed suit in this Court for payment of money owed and to foreclose on the Property. (Doc. 1-11.) In their Answer, Defendant Worldwide and Defendant Baptist Church Pension and Retirement Fund, Inc. asserted counterclaims for breach of contract and the breach of the covenant of good faith and fair dealing.[2] (Doc. 12.) Plaintiff moved for summary judgment on all claims. (Doc. 138.) Defendants oppose the motion. (Doc. 146.)

**II.   Legal Standard**

Summary judgment is appropriate when the Court, viewing the record in the light most favorable to the non-moving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56. In cases where the moving party will not bear the burden of persuasion at trial, the moving party

---

[1] Roger S. Saul is the spouse of Alma A. Saul. Conception S. Aliviado and the late Raymundo E. Aliviado are the parents of Alma A. Saul.
[2] The claims against Alma A. Saul and Conception S. Aliviado were dismissed by stipulated order. (Docs. 126 and 178.) Default judgments were entered in favor of Plaintiff and against Alice M. Benson, the Estate of Raymundo E. Aliviado, and First Federal Bank, N.A. (Docs. 173, 174, and 175.)

bears the initial responsibility of identifying an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Once the moving party meets this burden, Rule 56(e) "requires the non-moving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In considering a summary judgment motion, the Court determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 34 (10th Cir. 2013), the burden on the moving party may be discharged by demonstrating to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325. On summary judgment, the Court must view the facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *See Taylor*, 713 F.3d at 34.

**III.   Statement of Facts**

On April 23, 2004, Defendant Worldwide executed a Business Loan Agreement and a Promissory Note for the purpose of borrowing $315,000.00 from Charter Bank of Santa Fe. (Docs. 1-1 and 1-2.) In the Promissory Note, Defendant Worldwide "promise[d] to pay to Charter Bank of Santa Fe . . . the principal balance of Three Hundred Fifteen Thousand & 00/100

Dollars ($315,000.00), together with interest on the unpaid principal balance from April 23, 2004, until paid in full." (Doc. 1-2; Affidavit of Stuart Miles, Doc. 138-1.)

The Loan was secured by a Mortgage and an Assignment of Rents on the Property. (Docs. 1-3 and 1-6.) The legal description of the Property is "Tracts lettered 'F', 'G', and 'H' of Plat of Lands of Chancy L. Bealmear, Section 15, T11N, R3E, NMPM, Bernalillo County, New Mexico, as the same are shown on the Plat for Assessment Purposes thereof, filed in the office of the County Clerk of Bernalillo County, New Mexico, on May 15, 1958, in Volume B3, folio 66." (*Id.*) The address of the Property is 118 Ortega NW in Albuquerque. (*Id.*)

On January 22, 2010, Charter Bank of Santa Fe was closed by the Office of Thrift Supervision, the Federal Deposit Insurance Corporation was appointed receiver for Charter Bank of Santa Fe, and the Federal Deposit Insurance Corporation sold, transferred, and assigned to Charter Bank of Albuquerque all of Charter Bank of Santa Fe's rights under the Loan Documents. (Doc. 138-1.)

On October 14, 2011, Charter Bank of Albuquerque was merged into Beal Bank. (Doc. 138-1.) Beal Bank assigned all of its rights in the Loan Documents to Beal Nevada Corporation, which in turn assigned them to Plaintiff. (Docs. 1-7, 1-8, 1-9, 138-1.) The documents in the chain of title between the Federal Deposit Insurance Corporation as Receiver for Charter Bank of Santa Fe and Plaintiff were signed by Allison Martin. (*Id.*) The documents refer to the powers of attorney from which Ms. Martin's authority is derived for the transfers. (*Id.*) The powers of attorney establish that Ms. Martin had the authority to transfer the Loan Documents at issue. (Doc. 157-1, 157-2, 157-3.)

Specifically, the 2010 power of attorney authorized Ms. Martin to "execute, acknowledge, seal and deliver on behalf of the Federal Deposit Insurance Corporation as

4

Receiver of Charter Bank of Santa Fe, New Mexico, all instruments of transfer and conveyance." (Doc. 157-1.)  The first 2011 power of attorney gave Ms. Martin the authority, on behalf of Beal Bank, to "transfer certain . . . loans . . . [and] real estate owned assets . . . to . . . Beal Nevada Corp."  (*Id.*)  The Second 2011 Power of Attorney gave Ms. Martin the authority, on behalf of Beal Nevada Corporation, to "transfer certain . . . loans . . . to its subsidiary, LPP Mortgage Ltd." (Doc. 157-3.)  Based on the powers of attorney and the transfer documents, Plaintiff is the holder of the Loan Documents.  (Docs. 1-7, 1-8, 1-9, 138-1.)

Defendant Worldwide failed to pay the Loan as agreed.  (Doc. 138-1.)  On September 7, 2011, Plaintiff advised Defendant that it had discovered numerous events of default.  (*Id.*)  The events of default included the fact that, in contravention of the terms of the Mortgage, Defendant Worldwide conveyed the Property.  (Doc. 138-2.)  Specifically, on May 25, 2004, Defendant Worldwide executed a Warranty Deed conveying the Property to Alma A. Saul.  (*Id.*)  The 2004 Warranty Deed was recorded on April 30, 2007.  (*Id.*)  On December 29, 2007, Alma Saul executed a Warranty Deed conveying the Property to Baptist Church Pension and Retirement Fund, Inc.  (*Id.*)  Another event of default occurred on July 1, 2011, when Roger Saul filed a Chapter 7 bankruptcy petition and subsequently received a discharge.  (*Id.*)  Additionally, Defendant Worldwide failed to pay the Loan as agreed and failed to comply with Plaintiff's demand letters.  (*Id.*)  Defendant Worldwide made its last regular payment towards principal on July 23, 2011.  (*Id.*)  After this payment, the unpaid principal balance of the Loan was $242,993.54.  (*Id.*)  As of July 25, 2011, the interest rate was 6.055%.  (Doc. 148-1, Roger Saul Depo. at 167.)

On April 13, 2012, Plaintiff notified Defendant Worldwide that the Loan was in default and the default interest rate of 18% would be applied if Defendant Worldwide did not cure the

default within thirty days. (Doc. 138-1.) Because Defendant Worldwide failed to cure the default, the default interest rate of 18% ($121.50 per day) began to accrue on May 14, 2012. (*Id.*) Defendant Worldwide made two payments totaling $3,294.83 in June 2012 that were applied to interest. (Doc. 138-3.) Interest accrued at 6.055% ($40.87 per day) from July 23, 2011 to May 14, 2012, and at 18% ($121.50 per day) from May 14, 2012 forward. (*Id.*) The June and July 2012 payments totaling $3,294.83 were equivalent to 80 days of interest at $40.87 per day. (*Id.*) Thus, the $3,294.83 paid in the summer of 2012 was credited as interest accrued from July 23, 2011 to October 11, 2011. (*Id.*)

On November 7, 2012, Plaintiff filed a lawsuit ("State Lawsuit") against Defendant Worldwide and others in the Second Judicial District Court of the State of New Mexico. *See LLP Mortgage v. Worldwide Christian Aid, Inc., et al.*, No. D-202-CV-2012-10366. (Doc. 138-2.) As of October 19, 2012, the unpaid principal balance of the Loan was $242,993.54 and the unpaid accrued interest was $27,999.58. (*Id.*; 138-1, Miles Aff.; Saul Depo. at 167.)

In January 2013, Plaintiff's representative Stuart Miles attended a mediation conference with the defendants in the State Lawsuit, including Roger Saul. (Miles Aff.) At the mediation, Plaintiff agreed to settle its claims against Defendant Worldwide in exchange for a payment of $28,301.95 of which $19,551.95 was for interest accrued at the contract rate through the anticipated effective date of the settlement (January 31, 2013) and $8,750.00 for a portion of Plaintiff's attorney's fees. (Miles Aff.) Additionally, the parties agreed to the execution of a written settlement agreement and modification agreement to reinstate the Promissory Note and the other Loan Documents. (*Id.*)

After the mediation, Defendant Worldwide advised Plaintiff that it was unable to pay the agreed amount of $28,301.95 and it could only pay $25,000.00. (Miles Aff.) Plaintiff agreed to

6

settle for this amount.  (*Id.*)  Because the parties had difficulties agreeing on the language of the written agreements, the parties agreed to a new effective date of May 15, 2013 for the settlement.  (*Id.*)  The parties to the Settlement Agreement were Plaintiff, Defendant Worldwide, Defendant Baptist Church Pension and Retirement Fund, Inc., Roger S. Saul, Alma A. Saul, Conception S. Aliviado, the Estate of Raymundo E. Aliviado (deceased), and Alice M. Benson, as Vice-President of the Baptist Church Pension and Retirement Fund, Inc.  (Doc. 1-11.)

In the Settlement Agreement, Defendant Worldwide agreed to "pay [Plaintiff] accrued interest in the amount of $23,772.00."  (Doc. 1-10.)  Additionally, Defendant Worldwide agreed to "pay [Plaintiff] the sum of $1,228.00 for attorney's fees and costs."  (*Id.*)  The total cash amount paid to Plaintiff under the terms of the Settlement Agreement was $25,000.00.  (Miles Aff.)  The effective date of the Settlement Agreement, May 15, 2013, was the date through which interest had been calculated for purposes of the settlement.  (*Id.*)  As of that date, the total unpaid interest at the contract rate of 6.055% was $23,842.85.  (*Id.*)  As of that date, the total unpaid interest at the default rate of 18% would have been $57,764.52 and Plaintiff has incurred attorney's fees in the amount of $76,665.51.  (Miles Aff.)  In lieu of seeking the higher default interest and attorney's fees amounts at trial, Plaintiff agreed to settle its claims against Defendant Worldwide for $25,000.00.  (Doc. 1-10.)  During settlement negotiations leading up to the Settlement Agreement, no statements or representations were made by Plaintiff that the principal balance on the Loan would be reduced by the settlement funds.  (Saul Depo. at 204; Miles Aff.)

The Settlement Agreement required the parties to enter into a Modification Agreement.  (Miles Aff.)  The Modification Agreement recited that the Loan balance was $242,993.54 and required Defendant to pay Plaintiff monthly payments of $1,761.23 ("modified payments")

beginning on June 1, 2013.  (Doc. 1-10.)  However, the last modified payment made to Plaintiff by Defendant Worldwide was on July 1, 2013.  (Doc. 81.)

The Modification Agreement reinstated the Loan Documents and required Defendant Worldwide to make monthly payments of $1,761.23 beginning June 1, 2013.  (Miles Aff.)  The Modification Agreement acknowledged that the unpaid principal balance of the Loan was $242,993.54.  (*Id.*)  Specifically, the Modification Agreement stated "that the unpaid principal balance of the Loan and Note, as of January 23, 2013, is $242,993.54 with interest paid to October 12, 2012."  (Doc. 1-11.)

The Modification Agreement does not explain why the phrase "with interest paid to October 12, 2012" was included.  (Miles Aff.)  Mr. Miles stated in his affidavit that the use of the date of October 12, 2012 was a mistake.  (*Id.*)  The date should have been October 12, 2011, the date to which Defendant Worldwide had paid accrued interest with the July 23, 2011 payments.  (*Id.*)  The purpose of the "interest paid to" language was to acknowledge that Plaintiff would not seek additional unpaid interest from Defendant Worldwide.  (*Id.*)  Because Plaintiff does not capitalize interest, the inclusion of the phrase "with interest to" had no bearing on the unpaid principal balance.  (*Id.*)  There was no discussion between the parties at the mediation or during subsequent negotiations about the use of the phrase "with interest paid to October 12, 2012" in the Modification Agreement.  (Miles Aff.)  Notably, there was no discussion between the parties either at the mediation or in subsequent negotiations regarding any reduction to the principal balance of the Loan.  (*Id.*)

According to Defendant Worldwide, the phrase "with interest paid to October 12, 2012" meant that the principal balance of the Loan should be decreased by $13,636.64.  (Doc. 146.)  The rationale for this stance is confusing.  Roger Saul states in his affidavit that he believed that

the use of the phrase "with interest paid to October 12, 2012" meant that the pre-default interest rate would be charged from October 12, 2012 to May 15, 2013 on the loan balance of $242,993.54, "and that to the extent any of the $23,772.00 paid pursuant to the Settlement Agreement exceeded the calculated interest due, any such excess would be credited against the principal balance of Defendant Worldwide's note."  (Doc. 146-4.)  Based on Mr. Saul's calculations, "$23,772.00 'interest' was paid against the loan when only $10,135.36 was due, resulting in 'excess interest' of $13,636.64." (*Id.*)  Mr. Saul testified in his deposition that he did not mention his belief about the reduction in principal to any representative of Plaintiff during settlement negotiations.  (Saul Depo. at 330-31.)

Defendant Baptist Church Pension and Retirement Fund, Inc. executed a Joinder and Consent to Modification Agreement in which it "expressly acknowledge[d] and agree[d] that notwithstanding that [Baptist] has no personal liability for repayment of the Loan (i) the Lender has full recourse to the Property . . . as security for payment of the Loan."  (Doc. 1-10.)

Defendant Worldwide made two payments required by the Modification Agreement; one payment on June 1, 2013 and one payment on July 1, 2013.  (Miles Aff.; Loan Payment History.)  These payments, which were for the total amount of $3,522.46, reduced the unpaid principal balance of the Loan from $242,993.54 to $241,377.75.  (*Id.*)

On July 12 2013, Roger Saul sent an e-mail to Plaintiff requesting that Plaintiff recalculate the principal balance.  (Doc. 1-12.)  Mr. Saul informed Plaintiff that if it failed to credit the principal balance of the loan with the $13,636.64 in "excess interest," Mr. Saul would withhold payments on the Loan.  (Doc. 146-4.)  Plaintiff responded that the settlement proceeds were intended to compensate Plaintiff for a portion of the unpaid interest and attorney's fees rather than to reduce the principal balance of the Loan.  (Doc. 1-12.)  Defendant Worldwide has

9

not made a full monthly payment to Plaintiff since July 1, 2013. (*Id.*) Defendant Worldwide has made several nominal payments to Plaintiff that total $76.69. (*Id.*)

On November 14, 2013, Plaintiff notified Defendants that Defendant Worldwide was in default and demanded payment. (Doc. 1-13.) Plaintiff declared the Loan in default and reinstituted the default interest rate of 18% effective November 30, 2013. (*Id.*)

On April 18, 2014, Plaintiff filed suit in this Court for payment of money owed and to foreclose on the Property. (Doc. 1.) Plaintiff moved to appoint a receiver. (Doc. 3.) Defendants opposed the motion and offered to deposit the monthly modified payments into the Court registry. (Doc. 14.) On October 20, 2014, the Court denied the motion to appoint a receiver and granted Defendant Worldwide's request to deposit the modified payments into the Court registry. (Docs. 20 and 21.) To date, Defendant Worldwide has deposited $9,546.64 into the Court registry.[3]

As of August 21, 2015, the unpaid balance of the loan, including principal interest accrued and late charges, was $323,945.40. (Miles Aff.) The unpaid balance consists of principal in the amount of $241,377.75, interest in the amount of $82,127.35, and late charges in the amount of $440.30. (*Id.*) The Loan continues to accrue interest in the amount of $120.69 per day. (*Id.*) Plaintiff has also incurred attorney's fees and costs. (*Id.*)

IV. Discussion

    A. **Plaintiff has standing to foreclose on the Property**

Defendants contend that Plaintiff lacks standing to foreclose on the Property because the Loan Documents were not validly assigned to Plaintiff. (Doc. 146.) Standing is a jurisdictional prerequisite that "may not be waived and may be raised at any stage of the proceedings . . . ."

---

[3] The fourteen modified payments of $1,761.23 that were due between October 20, 2014 and the present date would total $24,657.22.

*See Bank of New York v. Romero*, 320 P.3d 1, 3 (N.M. 2014).  In order to establish standing to foreclose, a lender must show that, at the time it filed its complaint for foreclosure, it had: (1) a right to enforce the note, which represents the debt, and (2) ownership of the mortgage lien upon the debtor's property.  *See Id.*, 320 P.3d at 6; *Deutsche Bank Nat'l Trust Co. v. Beneficial N.M. Inc.*, 335 P.3d 217, 220 (N.M. 2014); *Bank of N.Y. Mellon v. Lopes*, 336 P.3d 443, 445 (N.M. Ct. App. 2014).  Standing must be established as of the commencement of a suit.  *See Romero*, 320 P.3d at 6.

In this case, Plaintiff has submitted documents showing that the Loan Documents were validly transferred to Plaintiff and it was the holder of the Loan Documents at all relevant times. On January 22, 2010, Charter Bank of Santa Fe was closed by the Office of Thrift Supervision, the Federal Deposit Insurance Corporation was appointed receiver for Charter Bank of Santa Fe, and the Federal Deposit Insurance Corporation sold, transferred, and assigned to Charter Bank of Albuquerque all of Charter Bank of Santa Fe's rights under the Loan Documents.  (Doc. 138-1.)

On October 14, 2011, Charter Bank of Albuquerque was merged into Beal Bank.  (Doc. 138-1.)  Beal Bank assigned all of its rights in the Promissory Note, Mortgage, and other Loan Documents to Beal Nevada Corporation, which in turn assigned them to Plaintiff.  (Docs. 1-7, 1-8, 1-9, 138-1.)  The documents in the chain of title between the Federal Deposit Insurance Corporation as Receiver for Charter Bank or Santa Fe and Plaintiff were signed by Allison Martin.  (*Id.*)  The documents refer to the power of attorney from which Ms. Martin's authority is derived for the transfers.  (*Id.*)  The power of attorney documents establish that Ms. Martin had the authority to transfer the Loan Documents at issue.  (Doc. 157-1, 157-2, 157-3.)

Plaintiff has presented documents to establish that Plaintiff is the holder of the Loan Documents.  (Docs. 1-7, 1-8, 1-9, 138-1.)  Indeed, Plaintiff has established that these documents

were assigned to it well before the Complaint was filed. (*Id.*) As a result, the record demonstrates that Plaintiff had the authority to enforce the Loan Documents at the time the Complaint was filed. (*Id.*) In that Plaintiff had ownership of the Loan Documents at all relevant times, Plaintiff has standing to enforce them and bring this foreclosure action.

  **B.**  **Defendant Worldwide is in default**

  Summary judgment is appropriate in a foreclosure suit if the plaintiff makes a prima facie showing that the defendant defaulted on its obligation under the note and mortgage, and the defendant fails to establish a genuine issue of material fact. *See Kepler v. Slade*, 896 P.2d 482, 484 (N.M. 1995) (observing that "the mortgagee may sue either on the note or foreclose on the mortgage, and may pursue all remedies at the same time or consequently"). The plaintiff in a foreclosure suit establishes that it is entitled to foreclosure of its mortgage and a judgment on a note upon a showing of the following: (1) the plaintiff rightfully possesses the note and mortgage; (2) the note and mortgage became due; and (3) the defendant failed to pay the note and mortgage on that date. *See RTC Mortgage Trust v. Guadalupe Plaza*, 918 F. Supp. 1441, 1445 (D. N.M. 1996). In this case, Plaintiff has satisfied all three requirements.

  First, as discussed *supra* in Section III A, Plaintiff is the holder of the Loan Documents. In that the record establishes that Plaintiff is the rightful possessor of the Loan Documents, Plaintiff has satisfied the first element of a prima facie case to foreclose. *See Flagstar Bank, FSB v. Licha*, 2015 WL 730063, ___ P.3d ___ (N.M. Ct. App. 2015) (concluding that the attachment of documents showing the chain of title is sufficient to establish standing to foreclose). Second, the Promissory Note and Mortgage came due no later than November 13, 2013, the date that Plaintiff sent the letter notifying Defendant Worldwide that it was in default and demanding payment of the Loan. (Doc. 1-13.)

Third, Defendant Worldwide does not dispute that it has failed to make the agreed monthly payments as required by the Loan Documents. The Business Loan Agreement defines an event of default as, inter alia, when "Borrower fails to make any payment when due under the Loan." (Doc. 1-1.) Similarly, the Promissory Note defines an event of default as when "Borrower fails to make any payment due under this Note." (Doc. 1-2.) The Mortgage defines an event of default as when "Grantor fails to make any payment when due under the indebtedness." (*Id.*) The failure of Defendant Worldwide to make the agreed monthly payments is an event of default as defined by the Loan Documents. It bears underscoring that Defendant Worldwide also breached the Modification Agreement by failing to pay Plaintiff $1,761.23 per month since July 2013. Defendant Worldwide does not dispute that it has failed to make payments as required by the Modification Agreement. Accordingly, Plaintiff is entitled to foreclose and to obtain a judgment against Defendants for the outstanding debt.

As of August 21, 2015, the unpaid balance of the loan, including interest accrued and late charges, was $323,945.40. (Miles Aff.) This sum is comprised of an unpaid principal balance in the amount of $241,377.75, interest in the amount of $82,127.35, and late charges in the amount of $440.30. (*Id.*) Interest on the unpaid principal balance of the loan continues to accrue at the rate of $120.69 per day. (*Id.*) Plaintiff also claims expenses, costs, and attorney's fees in an amount that Plaintiff will prove after judgment is entered in its favor. (*Id.*) The Loan Documents provide that Plaintiff is entitled to the costs and attorney's fees that it has incurred in this case, legal expenses, court costs, and all expenses incurred by Plaintiff as a result of searching title records, obtaining title reports, surveyor's reports, and appraisal fees and title insurance. (Docs. 1-2 and 1-3.)

Accordingly, the Court will enter judgment in favor of Plaintiff finding that Defendant Worldwide defaulted on the Loan and breached the Loan Documents and the Modification Agreement, allowing Plaintiff to foreclose on the Property, and awarding Plaintiff the damages to which it is entitled under the Loan Documents.  The Court will enter judgment in Plaintiff's favor in the amount of the unpaid principal balance of the loan, $241,377.75, plus accrued interest of $82,127.35 as of August 21, 2015 with interest continuing to accrue at $120.69 per day, plus late fees in the amount of $440.30.  (*Id.*)  The Court will award Plaintiff its expenses, costs, and attorney's fees in an amount to be determined after Plaintiff files a properly supported motion pursuant to Rule 54(d)(2) of the Federal Rules of Civil Procedure.

      **C.**      **Plaintiff is entitled to foreclose on the Property**

Defendant Baptist Church Pension and Retirement Fund, Inc. is the current owner of the Property as it obtained title from Alma Saul, who obtained title from Defendant Worldwide.  In May 2013, Defendant Baptist Church Pension and Retirement Fund, Inc. executed a Joinder and Consent to Modification Agreement in which it "expressly acknowledge[d] and agree[d] that notwithstanding that [Baptist] has no personal liability for repayment of the Loan (i) the Lender has full recourse to the Property . . . as security for payment of the Loan." (Docs. 1-10 and 1-11.)  Because Defendant Baptist Church Pension and Retirement Fund, Inc. agreed that Plaintiff is entitled to the Property as security for payment of the Loan, the Court will issue an order recognizing Plaintiff's right to foreclose on Defendant Baptist Church Pension and Retirement Fund, Inc.'s interest in the Property.

      **D.**      **Plaintiff is entitled to summary judgment on the counterclaims**

Defendant Worldwide and Defendant Baptist Church Pension and Retirement Fund, Inc. asserted counterclaims against Plaintiff for breach of contract and breach of the duty of good

faith and fair dealing. The counterclaims are based on the premise that $13,636.64 of the settlement funds should have been applied to reduce the principal balance of the Loan. This premise is not supported by the contractual agreements between the parties.

The Settlement Agreement clearly provides that the $25,000.00 settlement payment was to compensate Plaintiff for unpaid accrued interest and attorney's fees. In exchange for the payment of $25,000.00, Plaintiff agreed to dismiss the State Lawsuit, forego its right to collect approximately $57,764.52 in default interest that had accrued, forego approximately $76,665.51 in attorney's fees that Plaintiff had expended while prosecuting the State Lawsuit, and cease the state foreclosure action. (Docs. 1-10 and 1-11.)

The Settlement Agreement expressly states that the $25,000.00 payment was for $1,228.00 in attorney's fees and $23,772.00 for accrued interest. (Docs. 1-10 and 1-11.) Neither the Settlement Agreement nor the Modification Agreement state that any portion of the $25,000.00 payment would be applied to reduce the principal balance of the Loan. (Docs. 1-10; 1-11.) Other than Mr. Saul's self-serving statements that his unilateral belief that $13,636.64 of the settlement proceeds were "excess interest" that should have reduced the principal balance, Defendant Worldwide has submitted no evidence that would dispute these facts. Under these circumstances, Plaintiff has not breached the Settlement Agreement or the Modification Agreement. Accordingly, Plaintiff is entitled to summary judgment on the counterclaims.

**V.     Conclusion**

Plaintiff has standing to enforce the Loan Documents and foreclose on the Property. Defendant Worldwide is in default. Plaintiff may foreclose on Defendant Baptist Church Pension and Retirement Fund, Inc.'s interest in the Property. Plaintiff is entitled to summary judgment on all claims and counterclaims.

**THEREFORE,**

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment, filed on August 21, 2015, (Doc. 138), is **GRANTED**.

**IT IS FURTHER ORDERED** that a judgment will issue forthwith.

**IT IS FURTHER ORDERED** that Plaintiff may submit a motion for attorney's fees pursuant to Rule 54(d)(2) of the Federal Rules of Civil Procedure no later than 14 days after the entry of judgment.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**